UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JENNIFER RUOTOLO, on behalf of herself and other similarly situated individuals,

Plaintiff,

v.

UTGR, LLC d/b/a BALLY'S TWIN RIVER LINCOLN CASINO RESORT AND BALLY'S TIVERTON CASINO & HOTEL and TWIN RIVER – TIVERTON, LLC d/b/a BALLY'S TIVERTON CASINO & HOTEL,

Defendants.

Case No. 1:24-cv-00268-JJM-PAS

**PLAINTIFF'S AGREED MOTION AND MEMORANDUM TO GRANT FINAL APPROVAL OF RULE 23 CLASS AND FAIR LABOR STANDARDS ACT COLLECTIVE SETTLEMENT**

Plaintiff, Jennifer Ruotolo ("Ruotolo" or "Named Plaintiff"), files this agreed motion requesting that the Court grant final approval of the parties' class and collective action settlement in this matter.

## INTRODUCTION

This class and collective action settlement was preliminary approved by this Court on June 23, 2025, after which notice was sent by the Claims Administrator to the 2,057 class member. Final approval should now be granted as there have

been no objections to the settlement and only two class member who have opted not to participate.

Ruotolo and the class and collective members were hourly non-exempt employees of either Defendant UTGR, LLC d/b/a Bally's Twin River Lincoln Casino ("UTGR") or Defendant Twin River – Tiverton, LLC d/b/a Bally's Tiverton Casino & Hotel ("Tiverton"). Ruotolo alleges that Defendants violated the Fair Labor Standards Act and Rhode Island wage and hour law at these casinos by failing to pay them for time spent doing mandatory training classes.

After significant investigation and litigation, Ruotolo and Defendants reached a class and collective action settlement with a maximum settlement amount of $222,500.00. A copy of the Class Settlement Agreement is attached as Exhibit 1. Even after deductions for attorneys' fees, claims administration and a negotiated general release payment for the Named Plaintiff, the settlement amount still represents over 100% of the alleged unpaid wages covering approximately 2,057 workers. The settlement will pay class and collective members, the cost of settlement administration, a $7,500 service award for the Named Plaintiff, and Class Counsel's attorneys' fees (one-third of the fund) plus expenses. After deducting these projected costs, the average settlement payment is estimated to be approximately $65—meaningful payments for these workers given the limited number of hours at issue. In exchange for these payments, class

members agree to an appropriately narrow release of wage and hour claims. This settlement is a fair, reasonable, and adequate resolution of a complicated wage and hour dispute covering two casinos.

On June 4, 2025, Named Plaintiff filed an agreed motion and memorandum for preliminary approval of a Rule 23 class action and FLSA collective settlement [Doc. 24], along with a copy of the Class Settlement Agreement [Doc. 24, Ex. 1].

On June 23, 2025, this Court issued an Order granting the motion for preliminary approval [Doc. 25].

The Named Plaintiff now requests that this Court approve the Class Settlement because it is the result of arms' length negotiations between the parties and their respective counsel. It is a fair, reasonable and adequate resolution of a *bona fide* dispute involving claims for alleged unpaid wages under the FLSA and Rhode Island wage and hour law, including state and federal minimum wages and overtime premiums. Accordingly, the Named Plaintiff respectfully requests that this Court enter a final order approving the settlement and dismissing the action with prejudice [a proposed Order Granting Final Approval to an FLSA Collective and Rule 23 Settlement and Dismissal of Action with Prejudice is attached hereto at Exhibit 2].

**NATURE OF THE CLAIMS, DEFENSES AND PROCEDURAL HISTORY**

## I. The Nature of the Claims and Defenses

Ruotolo was an hourly paid table games dealer for UTGR during the relevant time period. SAC, Doc. 23 at ¶8. During the relevant time period, Ruotolo took required online training courses for which she alleges she was not properly compensated. SAC, Doc. 23 at ¶10-16.

On July 9, 2024, this Action was commenced by filing a class and collective action complaint [Doc. 1]. On December 3, 2024, the complaint was amended to add the Named-Plaintiff as a party-plaintiff [Doc. 16]. On April 14, 2025, the complaint was again amended to remove Tracy Pfeiffer as a named-plaintiff. As a result, only Ruotolo currently remains as a Named-Plaintiff (Doc. 23).[1]

Ruotolo has asserted that Defendants jointly employed her and all other relevant workers at the Twin River and Tiverton casinos. SAC, Doc. 23 at ¶ 6. Defendants denied that they were a joint employer and asserted that employees who worked at the Twin River casino were employees of Twin River and that employees who worked at the Tiverton casino were employees of Tiverton. Ruotolo asserted two causes of action against Defendants—both tied to alleged unpaid training and onboarding time— one under the Fair Labor Standards Act ("FLSA"),

[1] Prior to Ruotolo becoming a Named-Plaintiff in this matter, Tracy Pfeiffer was a named-Plaintiff in this action. On March 21, 2025, Ms. Pfeiffer's claims in this action were severed and consolidated with her individual lawsuit in the matter of *Pfeiffer v UTGR, LLC*, C.A.: 24-cv-298-JJM.

and the other under the Rhode Island Payment of Wages Act ("RIPWA"). *Id.* at ¶¶ 31-34. Ruotolo asserted these claims on behalf of a putative class and collective of similarly situated hourly employees at both casinos.

Defendants established that all onboarding time was correctly paid and alleged that any training time worked off the clock was minimal and would have been in violation of written company policy. From its records, Defendants were able to establish which hourly employees could have potentially attended an online training class while not clocked in and how much uncompensated time could have been spent in that class. The parties exchanged data and information and were eventually able to negotiate a reasonable class and collective action settlement that this now before the Court.

## SUMMARY OF KEY SETTLEMENT TERMS

### II. The Settlement Class and Collective

Ruotolo asks the Court to grant final certification of the following settlement collective and class of workers at the UTGR and Tiverton casinos pursuant to 29 U.S.C. § 216(b) (*see* Ex. 1, Settlement Agreement at ¶ 1.4, referred to as "Class Members" in the Settlement Agreement):

> The 2,057 employees in Rhode Island who, according to Defendants' records, may have completed a required training class from home while not clocked in between the time period of July 1, 2021 and August 31, 2024.

As indicated above, there are approximately 2,057 employees covered by the settlement.

**III. The Settlement Benefits**

The Maximum Settlement Amount is $222,500.[2] The settlement is structured in a way to maximize participation, in that class members did not affirmatively need to return a claim form in order to recover their settlement amount. Each class member who did not opt out, will receive a settlement check following final approval and by endorsing or signing the check, they are opting in to the FLSA component of the settlement. The cost of settlement administration ($16,950.00), a service award to the Plaintiff ($7,500.00), and Plaintiffs' counsel's attorneys' fees (one-third of the fund—$74,166.67) and expenses ($705.97) will be paid out of the Maximum Settlement Amount. Ex. 1, Settlement Agreement at ¶ 3.1(A). The remaining amount, called the Net Settlement Amount, will be used to pay the claims of all class members who do not opt out. Each class member's award was calculated by taking the total number of hours as reflected in Defendants' records during which they could have completed a required training class from home while not clocked in during the relevant time frame divided by the total hours for the class.

[2] Defendants will also, separately from this fund amount, pay the employer's share of FICA, FUTA, and SUTA/SUI payroll taxes on all W-2 wage payments issued under the Settlement Agreement.

Named-Plaintiff's counsel estimates that, after accounting for the projected cost of settlement administration, the service award, and Plaintiff's counsel's fees and expenses, the estimated *per capita* settlement payment will be approximately $65.

## IV. Notice Program, Settlement Structure, and Release

Since this Court's Order preliminarily approving the settlement, Defendants provided the settlement administrator with each class member's contact information and allocated percentage of the Net Settlement Amount. Ex. 1, Settlement Agreement at ¶ 2.4. The settlement administrator sent the Court-approved Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing to each class member at their last known address. *Id*.

The notice documents explained in clear and easy to understand language the class members' estimated payment, settlement structure, requested attorneys' fees and expenses, requested service award, scope of the release, and the class member's options to participate, object, or request to be excluded. *See generally* Exhibit 2. The notice explained that class members may opt out or object within 45 days of the mailing of the notice. Ex. 1, Settlement Agreement at ¶ 2.6, 2.8. The time deadline to opt out or object to the settlement was September 15, 2025. **The Settlement Claims Administrator did not receive any written objections to the settlement.** Only two (2) class members opted out of the settlement:

Johann Tosov and Xavier Pol. Copies of the written opt-out communications from these individuals are attached at Exhibit 3.

In exchange for the settlement payments detailed above, Rule 23 class members who do not request exclusion will release any wage and hour claims against Defendants (except FLSA claims as described below) as more fully explained in the Settlement Agreement. *Id*. at ¶ 4.1(A). Further, each settlement check will operate as a consent to join the collective action FLSA settlement, meaning that each class member who signs or otherwise endorses their settlement check will also release their claims under the FLSA. *Id*. at ¶ 4.1(A). The Named Plaintiff agreed to a general release in exchange for her service award as more fully explained in the Settlement Agreement. *Id*. at ¶ 4.1(B).

## V. Service Awards, Attorneys' Fees, and Expenses

The Settlement Agreement provides for a $7,500 service award for the Named Plaintiff to be paid from the settlement fund subject to the Court's approval. *Id*. at ¶ 3.3(A). In addition and also subject to approval by the Court, Class Counsel's attorneys' fees and costs will be paid out of the Maximum Settlement Amount. *Id*. at ¶ 3.2. As detailed below, Class Counsel will seek an award of reasonable attorneys' fees of no more than one-third (33.33%) of the Maximum Settlement Amount plus reasonable costs actually incurred. *Id*. The

settlement is not contingent on the Court awarding any specific amount to Class Counsel as attorneys' fees. *Id* at ¶ 3.2(B).

## ARGUMENT

### VI. Standard of Review for Final Approval of a Class Action Settlement

A class action can only be settled with the court's approval. Fed. R. Civ. P. 23(e). Specifically, when a settlement agreement proposes to bind absent class members, the district court must direct notice to all class members if it finds that it "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii).

Following preliminary approval and notice to all class members, the district court holds a fairness hearing at which class members may appear to support or object to the proposed settlement. *Wright v. S. New Hampshire Univ.*, 565 F. Supp. 3d 193, 200–01 (D.N.H. 2021). At the second stage of the inquiry, the court must decide whether to grant final approval of the proposed settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997).

Under Rule 23(e)(2), the district court may grant final approval of a class action settlement if it can certify the proposed class, and if it finds that the proposed agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The First Circuit has recognized as an "important concern" the policy to

encourage and facilitate class action settlements where appropriate under Rule 23(e). *Howe v. Townsend*, 588 F.3d 24, 36 (1st Cir. 2009) (citing *Durrett v. Hous. Auth.*, 896 F.2d 600, 604 (1st Cir. 1990)).

Thus, to approve the proposal under Rule 23(e)(2), the court must find that it is "fair, reasonable, and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Where, as here, the parties have sufficient discovery and data exchanged to fairly evaluate their respective positions and have bargained at arm's-length, "there is a presumption in favor of the settlement." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).

As explained below, Rule 23(e)'s factors show that this settlement falls within the range of reasonableness necessary to send notice to the settlement class.

## VII. The Proposed Settlement is Fair, Reasonable, and Adequate

Pursuant to Rule 23(e)(1)(B)(i), the Court may grant final approval of a class action settlement if it "will likely be able to approve the proposal under Rule 23(e)(2)" which entails reviewing four enumerated factors. The Named Plaintiff address each factor in turn.

### A. Plaintiffs and their counsel have provided excellent representation to the class.

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23, Advisory Committee Notes (Dec. 1, 2018) (hereafter "Advisory Committee Notes"). In this case, the adequacy factor is satisfied. First, the two firms representing Ruotolo have devoted much of their practice over the years to prosecuting wage and hour claims. From this experience, Ruotolo's counsel possess an extensive knowledge of wage and hour law, the type of evidence that typically exists, and how to value these claims. Declaration of Michael D. ("Pushee Decl.) attached hereto as Exhibit 4; Declaration of Richard E. Hayber ("Hayber Decl.") attached hereto as Exhibit 5.

Second, through data and evidence produced voluntarily during the settlement negotiations, Class Counsel has the information necessary to evaluate

the merits of Ruotolo's claims including those of the class, as well as the Defendants' arguments and legal authority, Defendants' payment practices and policies for training time, and Defendants' wage and hour data to calculate class and collective-wide damages. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."). This factor weighs in favor of approval.

**B. The settlement was negotiated at arm's length.**

This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e), Advisory Committee Notes. Here, this factor is likely to be satisfied because the settlement was achieved after months of negotiation and exchange of information and documents for the entire class. Hayber Decl.; Pushee Decl. This factor weighs in favor of approval.

**C. The relief provided to the class is adequate.**

Rule 23(e) charges the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i-iv).

In this case, there is no doubt these factors point towards settlement approval. All of the factors identified by Rule 23(e)(2)(C) should be viewed in light of the meaningful monetary benefit this settlement confers on class members and that this settlement recovers over 100% of the disputed training time wages. Relying on Defendants' comprehensive data, Ruotolo's counsel calculated class-wide backpay damages of approximately $103,000 in unpaid wages. Hayber Decl. par. 13; Pushee Decl., par. 13. Even after deductions for attorneys' fees and other expenses, the Net Settlement Amount will exceed that number. Likewise, the mean average settlement check is estimated to be approximately $65. That is a significant recovery in any wage case (and class actions generally). *Singleton v. First Student Mgmt. LLC*, No. CIV.A. 13-1744 JEI, 2014 WL 3865853, at *7 (D.N.J. Aug. 6, 2014) (approving wage and hour settlement where "the proposed settlement amount is about 40% of the Plaintiffs' estimate.").[3]

---

[3] *See, e.g., Kauffman v. U-Haul Int'l, Inc.*, 2019 WL 1785453, at *3 (E.D. Pa. Apr. 24, 2019) (approving wage and hour settlement where "Plaintiff will receive payment of a meaningful portion (approximately 28%) of his alleged unpaid overtime wages…"); *Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2006) (approving settlement that represented 20% of best possible recovery and noting courts that have approved settlements with even lower ratios); *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010); (approving a class action settlement that recovered "approximately one-third of claimed unpaid wages" and finding "there can be no doubt that the results achieved for the class members are exceptional."); *Southwood v. Milestone Mgmt. PA-Feasterville, LLC*, No. CV 19-2569, 2020 WL 5554396, at *4 (E.D. Pa. Sept. 15, 2020) (approving wage settlement for "54% of the amount Plaintiff claims to be owed" and finding this to be a "positive result.").

**1. The relief provided to the class is adequate considering the costs, risks, and delay of trial and appeal.**

Considering the costs, risks, and delay of trial and appeal, the proposed settlement satisfies Rule 23(e)(2)(C)(i). As noted above, the settlement confers a significant monetary payment on class and collective members. This recovery would be a strong recovery in any wage and hour case, but it is particularly so when weighed against the procedural and substantive risks in the case.

This case faced several risks absent settlement and, though Ruotolo does not believe any would have prevented a recovery, they must still be factored into the risk analysis. First, Defendants would argue that Ruotolo's claims were not suitable to class and collective treatment due to individual issues. Second, Defendants would argue that anyone who did not clock in for their training time and/or did it from home, did so in violation of policy. Third, Defendants would surely argue that the time *de minimis* and/or not during overtime weeks. Ruotolo's counsel has no doubt that Defendants would make other arguments as well, all of which would be costly and time-consuming to oppose.

Compared to proceeding in litigation, this settlement is *risk-free* and offers significant compensation to class members immediately. S*ee In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010) (recognizing "immediacy and certainty"

of recovery as potential benefit to proposed settlement class). For class members to obtain a recovery superior to what this settlement provides would take years of expensive and complex litigation. Ruotolo would need to win class and collective certification, defeat class and collective decertification, defeat summary judgment, win at trial, and win on appeal. If Ruotolo lost any issue at any time, class and collective members would almost certainly recover far less than what is offered through settlement or nothing at all. This factor weighs in favor of settlement approval.

**2. The relief provided to the class is adequate considering the effectiveness of distributing relief to the class.**

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Advisory Committee Notes. In this case, class members are not required to file any claim forms or take any affirmative steps to receive a settlement payment. Instead, unless class members request to be excluded, they will automatically be sent a check for their settlement amount. Ex. 1, Settlement Agreement at ¶ 2.5(A). Moreover, every individual covered by the settlement received an individualized notice that explained the settlement and specifies his or her anticipated settlement payment amount and options under the Settlement Agreement. *See generally* the Notice form. This factor weighs in favor of settlement approval.

**3. The relief provided to the class is adequate considering the terms of the proposed award of attorneys' fees.**

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Advisory Committee Notes. In this case, and as detailed below, Class Counsel are requesting the Court award attorneys' fees of up to one-third of the Maximum Settlement Amount, which equates to $74,166.67 plus reasonable expenses actually incurred. Ex. 1, Settlement Agreement at ¶ 3.2.

A fully briefed below, the requested attorneys' fee is in line with that awarded by Courts within the District of Rhode Island and First Circuit. *See, e.g.*, *Kondash v. Citizens Bank, Nat'l Ass'n*, 2020 WL 7641785, at *5 (D.R.I. Dec. 23, 2020), *report and recommendation adopted*, 2021 WL 63409 (D.R.I. Jan. 7, 2021) (describing one-third fee in class action as "eminently reasonable" and collecting cases). Moreover, the Settlement Agreement makes clear that the settlement is not contingent on the Court awarding a particular fee. Ex. 1, Settlement Agreement at ¶ 3.2. The fee provision favors preliminary approval of the settlement.

**4. The relief provided to the class is adequate considering there are no agreements required to be identified under Rule 23(e).**

The only agreement between the parties is the Settlement Agreement. This factor weighs in favor of settlement approval.

### D. The Settlement Agreement treats class members equitably to one another.

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others." Advisory Committee Notes. In this case, the parties worked diligently to each Class Member's potentially unpaid training hours and allocate the Net Settlement Amount accordingly. Ex. 1, Settlement Agreement at ¶ 3.4. This is the most fair and efficient way to allocate the common fund. This factor weighs in favor of settlement approval.

## VIII. Class Certification for Settlement Purposes is Warranted.

Once the Court determine it "will likely be able to … approve the proposal under Rule 23(e)(2)," the Court can turn to the second half of the final approval inquiry: whether the Court "will likely be able to . . . certify the class." Fed. R. Civ. P. 23(e)(1)(B)(ii). As discussed in more detail below, Ruotolo asks the Court to certify the aforementioned class for settlement purposes only.

To obtain class certification, Ruotolo must satisfy Rule 23(a)'s four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015). In addition, Ruotolo must satisfy Rule 23(b)(3)'s two additional requirements: (5) common questions of law or fact must "predominate over any questions affecting only individual members" and (6) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed.

R. Civ. P. 23(b)(3). Ruotolo is likely to satisfy these requirements here.

**A. Numerosity is likely to be satisfied.**

The numerosity inquiry tests whether joinder of all class members in a single proceeding would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). Given that there are over two thousand class members, numerosity is satisfied. "As a general rule, if the named plaintiffs demonstrate 'that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" *Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, 540 F. Supp. 3d 182, 198 (D.R.I. 2021) (Smith, J.) (quoting *García-Rubiera v. Calderón*, 570 F.3d 443, 460 (1st Cir. 2009)).

**B. Commonality is likely to be satisfied.**

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" such that their claims "can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (internal citations omitted). Here, the class members' claims share a common factual core, as they each suffered the same alleged injury—failure to pay for training time done at home.

Class members share the common legal and factual issue of whether Defendants' policies and payment procedures violated federal and Rhode Island law. Commonality is likely to be satisfied.

### C. Typicality is likely to be satisfied.

To ensure that the class representatives "have the incentive to prove all the elements of the cause of action" that would otherwise have been individually brought by class members, Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *In re Oxford Health Plans*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000). As this Court has noted, typicality can be satisfied in the employment context when employees were subject to the same challenged practices and policies. *Walsh v. Gilbert Enterprises, Inc.*, 2019 WL 1206885, at *4 (D.R.I. Mar. 14, 2019) (Smith, J.).

Here, Ruotolo's litigation goals completely align with those of class members. Like each class member, Ruotolo completed mandatory training classes from home for which she was allegedly not paid. Ruotolo and class members share this common claim, premised on common facts, and will be entitled to common remedies under federal and state law. *See, e.g., Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("Typicality . . . 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'") (citation omitted). Typicality is satisfied.

### D. Adequacy is likely to be satisfied.

"The adequacy inquiry . . . serves to uncover conflicts of interest between

named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625; *see also Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012). No such conflict of interest exists or will arise in this case, as Ruotolo and the workers she seeks to represent allege the same claims under federal and state law and Ruotolo was motivated to (and has) maximized the recovery for the class. *See, e.g., Adams*, 2022 WL 593911, at *10 (granting class certification in casino wage and hour case because plaintiff "has a sufficient stake in the outcome and no antagonistic or conflicting claims with other class members.").

Further, Ruotolo has retained lawyers who are qualified and experienced in wage and hour class actions against casinos. Hayber Decl., Ex. 5, Pushee Decl., Ex. 4. The adequacy requirement is satisfied.

**E. Predominance is likely to be satisfied.**

Common questions predominate if the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. This requirement is satisfied "if resolution of some of the legal or factual questions . . . can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

Here, predominance is satisfied because the success or failure of Ruotolo's challenge to Defendants' policies and pay practices will require the Court to apply

common legal principles to common facts. There are no facts which will predominate over the common evidence and issues in this case. The predominance requirement is satisfied.

**F. Superiority is likely to be satisfied.**

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . . ." 7AA Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed. 2005). As discussed below, each of the superiority factors set out in Rule 23(b)(3) favors class certification.

First, Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions." This requirement is intended to protect against class certification where individual class members have a strong interest in "individually controlling" the litigation because, for example, the individual claims are emotionally charged or involve significant damages amounts. Newberg on Class Actions §4:69. Here, the alleged technical wage violation would result in minimal damages per class member.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. This factor weighs in favor of approval because, aside from Ms. Pfeiffer's severed claim as discussed above, this case is the only case challenging the training time

practice at Defendants' two Rhode Island casino properties

Third, Rule 23(b)(3)(C) requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum." Fed. R. Civ. P. 23(b)(3)(C). Here, concentration of all claims in this Court is both efficient and desirable because all class members worked at either Bally's Twin River or Tiverton, both of which are located within this judicial forum.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(D). This requirement is automatically satisfied when a case is certified for settlement purposes. *Amchem,* 521 U.S. at 620. The superiority requirement is satisfied.

## IX. The Court Should Appoint Plaintiff's Counsel as Class Counsel.

At the final approval stage, the Court may appoint class counsel in conjunction with the certification of the settlement class. Fed. R. Civ. P. 23(g)(1). Here, Ruotolo's counsel respectfully asks the Court to appoint them class counsel. Each firm is comprised of experienced wage and hour and class action lawyers. Pushee Decl., Ex. 4; Hayber Decl., Ex. 5.

## X. The Release of FLSA Claims Should Be Approved as a Fair and Reasonable Resolution of a *Bona Fide* Dispute and Certified as a Collective Action.

District Courts within the First Circuit approve FLSA settlements where they represent a "fair and reasonable resolution of a bona fide dispute over FLSA

provisions." *Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260 (D. Mass. 2015) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982)). For the same reasons that the settlement is fair, reasonable, and adequate under Rule 23(e), the Court can approve the FLSA release for collective members who opt in by negotiating their settlement checks. In addition, for the same reasons that class certification is appropriate under Rule 23(a) and (b)(3), conditional collective certification is likewise appropriate. *McKnight v. Honeywell Safety Prod. USA, Inc.*, No. CV 16-132 S, 2017 WL 3447894, at *6 (D.R.I. Aug. 11, 2017) (Smith, J.) (adopting Report and Recommendation to conditionally certify collective because workers were "similarly situated").

## XI. Named Plaintiff Submits That The Proposed Service Payment Is Reasonable.

Under the Settlement Agreement and subject to Court approval, the Named Plaintiff will receive a service payment or incentive award in the amount of $7,500. The Named Plaintiff and her Counsel believe that such a payment is reasonable for Ruotolo being the sole representative of the putative Rule 23 Class and FLSA Collective and making the proposed settlement available for other employees through her efforts in being a Named Plaintiff and generally assisting Class Counsel in prosecuting the case, and to compensate the Named Plaintiff for taking

on the inconvenience of filing suit and prosecuting claims on behalf of the putative Rule 23 Class and FLSA Collective.

Courts in the First Circuit routinely approve incentive payments in class and collective action settlements as a way of compensating representatives for lending their names, reputations, and efforts to the prosecution of litigation on behalf of others, and to promote class settlements while encouraging plaintiffs to act as "private attorneys general" in the enforcement of state and federal law. *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 352 (D. Mass.), *aff'd,* 809 F.3d 78 (1st Cir. 2015) ("Incentive awards serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall.") "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* (citations omitted). It is not uncommon for courts to approve incentive payments in the range of the one requested in this case, and in even higher amounts. *See Bettencourt v. Jeanne D'Arc Credit Union*, No. 17-CV-12548-NMG, 2020 WL 3316223, at *1 (D. Mass. June 17, 2020)(approving class representative award of $10,000.00); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 469 (D.P.R. 2011)(approving $8,000.00 incentive award for representatives who supplied documents and reviewed court filings, but were not required to engage in discovery, including depositions); *see, e.g., Kiefer, et. al., v.*

*Moran Foods, LLC, et. al.*, No. 12-CV-756 (D. Conn. Aug. 5, 2014) (ECF No. 328) (granting final settlement approval, awarding incentive payment to main named plaintiff of $30,000, and to two named plaintiffs of $10,000 each); *Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500)*; Duchene v. Michael Cetta, Inc.,* 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009) (approving an award of $25,000); *Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556, at *40 (S.D.N.Y. Apr. 16, 2012) (approving service payments of $10,000 and $15,000); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 U.S. Dist. LEXIS 12762, at *5 (S.D.N.Y. Feb. 9, 2010) (finding individual incentive awards ranging up to $15,000 to be appropriate); *Reyes v. Altamarea Grp., LLC*, 2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 and $5,000); *Khait v. Whirlpool Corp.*, 2010 U.S. Dist. LEXIS 4067, at *26 (E.D.N.Y. Jan. 20, 2010) (approving awards of $15,000 and $10,000 to named plaintiffs); *Yap v. Sumintomo Corp. of America*, 1991 WL 29112, at *9 (S.D.N.Y. 1991) (awarding $30,000 additional compensation to representative Plaintiff).

Relative to these amounts approved in the other cases cited above, the incentive payment proposed here is in the middle range of such awards and is thus reasonable. Moreover, an incentive payment for the Named Plaintiff is justified because "an employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her [unpaid wages] rights." *Salim*

*Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) (citation omitted). Here, Named Plaintiff and Class Counsel contend that a service award to the Named Plaintiff is justified based on the risk factor because for the remainder of her working life, she faces potential retaliation from prospective employers for filing suit. Further, Named Plaintiff hired Class Counsel and communicated via email and telephone many times with Class Counsel during the litigation. The Named Plaintiff was a valuable, accurate, and responsive source of information with respect to what information and documents to seek from Defendants and general knowledge as to the Defendants' business practices relative to training, record keeping, and her contributions facilitated recovery in this matter.

## XII. The Proposed Attorneys' Fees Are Reasonable.

The FLSA explicitly provides that "[t]he court in [an FLSA] action *shall* . . . allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). The RIPWA also permits recovery of reasonable attorney's fees and costs. R.I.G.L. § 28-14-19.2(a). Further, courts recognize that availability of attorneys' fees in wage and hour disputes is essential to motivate legal counsel to represent individuals who are owed wages, especially in instances in which the plaintiffs' recovery may be small. *See, e.g.*, *Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009) (noting that "courts have rejected the notion that fee awards should be proportionately tied to a

plaintiff's recovery" and observing that FLSA fee-recovery provisions "were designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements").

**A. Attorneys' fees of one-third of the settlement fund are routinely approved in wage class and collective actions.**

Attorneys' fees in the amount of one-third of the Maximum Settlement Amount for Class Counsel are reasonable to compensate them for their hard work over in pursuing claims of unpaid wages on behalf of the putative FLSA Collective and Rule 23 Class.

Although there are two (2) ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *Curtis v. Scholarship Storage Inc.*, No. 2:14-CV-303-NT, 2016 WL 3072247, at *3–4 (D. Me. May 31, 2016). – the percentage of the fund method is most typical in common fund cases like this one. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

"In class and collective action wage and hour lawsuits, public policy favors a common fund attorneys' fee award." *Aros*, 2012 U.S. Dist. LEXIS 104429, at *16 (citing *Reyes v. Altamarea Grp., LLC*, 2011 U.S. Dist. LEXIS 115984 (S.D.N.Y.

Aug. 16, 2011)). "Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by 'private attorneys general,' attorneys who fill that role must be adequately compensated for their efforts." *Id.*; *see also Dixon v. Zabka*, 2013 U.S. Dist. LEXIS 77715, at *7 (D. Conn. May 23, 2013) (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel"). If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Aros*, 2012 U.S. Dist. LEXIS 104429, at *17 (citing *Willix v. Healthfirst Inc.*, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011)); *Sand v. Greenberg*, 2010 U.S. Dist. LEXIS 1120, at *9 (S.D.N.Y. Jan. 7, 2010) ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

There are several reasons that courts prefer the percentage method. The percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); *Caitflo, L.L.C. v. Sprint Communs. Co. L.P.*, 2013 U.S. Dist. LEXIS 90858, at *6 (D. Conn. June 24, 2013); *Collins v. Olin Corp.*, 2010 U.S. Dist. LEXIS 39862, at *22 (D. Conn. Apr. 21, 2010). Further, the

percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients").

Additionally, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation to increase their billable hours. It "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted). The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method.").

The percentage method also preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Karpus v. Borelli (In re Interpublic Sec. Litig.)*, 2004 U.S.

Dist. LEXIS 21429, at *32 (S.D.N.Y. Oct. 26, 2004) (quoting *Savoie*, 166 F.3d at 461 n.4). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 48-49 (2d Cir. 2000).

In determining the reasonableness of an award of attorneys' fees, courts are: "guided by several factors, including (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Sewell v. Bovis Lend Lease LMB, Inc*., 2012 U.S. Dist. LEXIS 53556, at *30-31 (S.D.N.Y. Apr. 16, 2012).

Here, one-third of the Maximum Settlement Amount, *i.e.,* $74,166.67, as an award for attorneys' fees, as well as $705.97 for out-of-pocket costs and expenses, is reasonable under the *Goldberger* factors.

First, Named Plaintiff's Counsel spent significant time and labor in this case. Some of the work the Class Counsel has done includes, without limitation, interviewing the Named Plaintiff and other employees as part of initial investigation and informal discovery, drafting the original and two (2) amended complaints, drafting and filing motions to amend, continuing follow-up with Defendants' Counsel by email and telephone on litigation matters, interviewing former employees on duties and evidence of training hours worked while not

clocked-in, preparing for and attending a Rule 16 conference, continuing settlement negotiations for several months, and reviewing and revising the Settlement Agreement and motions for approval settlement and other relevant documents. Pushee Decl. Ex. 4, at ¶11; Hayber Decl., Ex. 5, at ¶12. Together, the lawyers for the Named Plaintiff have put in over 54 hours in the case.[4] Pushee Decl., Ex. 4, at ¶15; Hayber Decl., Ex. 5, at ¶14. Thus, the first factor supports a one-third fee.

Second, the complexities of this case also support a one-third fee. Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. This case is no exception. It involved multiple legal issues such as: whether an exemption applied; whether the class was paid the proper amount for all hours worked, including overtime; whether their claims were based on a common employer practice; whether the appropriate class for conditional certification would be two or three years; whether equitable tolling would apply to the case and to what extent; whether the employees were similarly situated for the purpose of conditional certification; whether the employees would meet the their burden under Rule 23, whether the Named Plaintiff was a proper class representative; whether the Defendants met their burden of taking active steps to establish good faith compliance with state and federal laws; and, analysis of how

[4] The time was compiled through May, 2025. If the Court deems it necessary, upon request, Class Counsel will provide a copy of their time records for *in camera ex parte* review. Said time records are not filed with this submission because they contain confidential attorney client privileged information.

the respective statutes of limitations and tolling provisions would affect the calculations of damages for the class. Accordingly, the second factor listed above also supports a one-third fee.

Third, the third factor also supports a one-third fee award. Named Plaintiff's Counsel took a great deal of risk in prosecuting this litigation on a pure contingency basis. Consequently, Class Counsel has worked on the case and advanced costs without any guarantee of payment. Pushee Decl., Ex. 4, at ¶14. *See Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218, at *27 (S.D.N.Y. June 7, 2011) ("The fact that Counsel's fee entitlement was entirely contingent upon success weighs in favor of reasonableness."). Further, Class Counsel also bore the risk of obtaining conditional certification and Rule 23 Class Certification—which has not happened yet—and likely having to defend a motion to decertify at a later stage to maintain any conditionally certified collective action or class action through a trial. *See In re Priceline.com, Inc.*, 2007 U.S. Dist. LEXIS 52538, at *10 (D. Conn. July 19, 2007) (noting plaintiffs bore risk of maintaining class through trial because, "although the court has certified the class in this case, the prospects of decertification certainly exist"). Hence, the third factor also supports a one-third fee.

Fourth, the quality of the representation Class Counsel has provided to the putative Rule 23 Class and FLSA Collective members also favors of a one-third fee award. To determine the 'quality of the representation,' courts review, among

other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit. *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467).

Class Counsel is experienced in wage and hour class and collective actions. *See Aros*, 2012 U.S. Dist. LEXIS 104429, at *19 ("[T]he Hayber Law Firm, LLC[5], are experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions."); Pushee Decl., Ex. 4, at ¶¶7-9; Hayber Decl., Ex. 5, ¶¶7-9 (listing cases). Indeed, Class Counsel recently prosecuted a similar wage and hour class and collective action before this Court in the *Bequir* case (cited above). The *Bequir* court approved the requested one-third fee award in that case. Here, Class Counsel has provided a high-quality representation for the Named Plaintiff and the putative FLSA Collective and Rule 23 Class, achieving a substantial recovery involving a settlement of $222,500.00.

Fifth, the requested fee and costs in relation to the size of the $222,500.00 settlement weighs in favor of granting the requested fee award of one-third of the Maximum Settlement Amount plus costs advanced, which at this stage are still relatively low.

---

[5] Class Counsel Hayber, McKenna & Dinsmore, LLC was previously known as The Hayber Law Firm, LLC.

Court have regularly found that fee requests between 33-40% of a common fund or settlement amount is reasonable. *Figueroa v. Advantage Opco, LLC*, 2017 WL 11220380, at *1 (S.D. Fla. Jan. 26, 2017), *report and recommendation adopted*, 2017 WL 11220355 (S.D. Fla. Feb. 13, 2017)(holding that several FLSA collective action cases have approved as reasonable fee awards ranging from 1/3 to 40% of the settlement amount); *Prena v. BMO Fin. Corp.*, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015)(finding that 33-40% contingency fee is typically charged in FLSA cases); *Lowery v. City of Albuquerque*, 2013 WL 1010384, at *44 (D.N.M. Feb. 27, 2013)(citing cases approving fees in an FLSA collective action of 38.5% of the total settlement plus litigation costs); *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 497 (E.D. Pa. 2018)(approving requested fee award of 35% of the common fund).

Finally, public policy considerations also support a one-third fee. The FLSA and RIPWA are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective—ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted). *Aros*, 2012 WL 3060470, at *4 ("Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA."); *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act

would continue unabated and uncorrected."). Hence, courts have recognized that fee awards, in cases like this, serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Aros*, 2012 WL 3060470, at *4; *Khait*, 2010 WL 2025106, at *8. Class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964). Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard." *Frank*, 228 F.R.D. at 189. If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.*; *Aros*, 2012 WL 3060470, at *4; *deMunecas*, 2010 WL 3322580, at *8; *Sand*, 2010 WL 69359, at *3.

### B. A lodestar crosscheck confirms that the requested attorneys' fee is reasonable.

While the First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee, the lodestar is useful as a cross-check on the percentage method by estimating the number of hours spent on the litigation and the hourly rate. *See In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 81 (D. Mass. 2005)(citations omitted).

Here, the lodestar "cross-check" further supports approval of the $74,166.67 fee award. *See Wal-Mart Stores, Inc.*, 396 F.3d at 123 ("As a 'cross-check' to a percentage award, courts in this Circuit use the lodestar method."); *Goldberger,* 209 F.3d at 50 ("[W]e encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."). In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50; *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check). Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id.*

As indicated in above, Class Counsel has spent over 54 hours on the case. At Class Counsel's hourly rates, the value of legal fees is $19,280.00. Pushee Decl., Ex. 4, at ¶15; Hayber Decl., Ex. 5, at ¶14. Additional time will need to be spent navigating the settlement approval process and processing payment to the class.

The lodestar multiplier in this matter—the proposed fee award ($74,166.67) divided by the lodestar calculation ($19,280.00)—is 3.85. This is reasonable lodestar multiplier in case such as this involving a class/collective wage and hour dispute. *See New England Carpenters Health Benefits Fund v. First Databank, Inc.,* 2009 WL 2408560, at *2 (D.Mass. Aug. 3, 2009) (awarding multiplier of 8.3);

*Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013)(awarding multiplier of 7.6 in wage and hour misclassification class action); *Davis,* 827 F.Supp.2d at 185–86 (awarding multiplier of 5.3 in wage and hour class action); *Buccellato v. AT & T Operations, Inc.,* No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *Maley v. Del Global Techs. Corp.,* 186 F.Supp.2d 358, 371 (S.D.N.Y. Jan.29, 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *Cosgrove v. Sullivan,* 759 F.Supp. 166, 167 n. 1, 169 (S.D.N.Y.1991) (awarding multiplier of 8.74). In this matter, Class Counsel are seeking a lodestar multiplier of 3.85. This is well within the range of multipliers that have been granted by courts in this Circuit and elsewhere for wage and hours class action cases.

Further, after Class Counsel spends additional time on this litigation in connection with implementing and monitoring the settlement, the lodestar will be even higher. Among other things, Class Counsel will be required to answer class member questions (especially after the fund is distributed), confirm, if needed, the amounts due to each Rule 23 Class and FLSA Collective member, and negotiate any potential disagreements with Defendants about the administration of the settlement and distribution of the fund. Since Class Counsel will likely perform additional work after the final approval hearing, Class Counsel's request is "even

more reasonable than it appears at first glance." *Beckman*, 293 F.R.D. at 482; *see also Aros*, 2012 WL 3060470, at *7.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests the Court grant the agreed motion for final approval of the class action settlement and the relief prayed for therein, approve the service award, approve attorneys' fees and expenses sought by Class Counsel, enter the proposed order (attached as Exhibit 2), and for any other relief the Court deems appropriate under the circumstances.

PLAINTIFF, JENNIFER RUOTOLO, and all other similarly situated individuals,

By her attorneys:

/s/ *Michael Pushee*
Michael D. Pushee (#6948)
Law Office of Michael D. Pushee
100 Midway Road, Suite 16
Cranston, RI 02920
Tel: (401) 214-9820
Fax: (401) 214-9840
mpushee@pusheelaw.com

/s/ *Richard E. Hayber*
Richard E. Hayber, Esq.
Thomas J Durkin, Esq.
Hayber, McKenna & Dinsmore, LLC
750 Main Street, Suite 904
Hartford, CT 06103
Tel: (860) 522-8888
Fax: (860) 218-9555
rhayber@hayberlawfirm.com
*Admitted Pro Hac Vice*

**CERTIFICATION**

I hereby certify that the within document has been electronically filed with the Court on this 6th day of October, 2025 and is available for viewing and downloading from the ECF system.

*/s/ Michael D. Pushee*